# PUMP-IT, INC. v. EDWARD J. ALEXANDER AND OTHERS.[1]

April 21, 1950.

No. 35,025.

---

[1]Reported in 42 N. W. (2d) 337.

*Thomas O. Dougherty* and *John Ott,* for appellant.

*John D. Nunan* and *James H. Colwell,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal by defendant Ferris J. Alexander (hereinafter referred to as Ferris) from an order of the district court denying his alternative motion for amended findings or for a new trial.

Defendants are the five Alexander brothers, Edward J., Nicholas J., Mitchell J., John J., and Ferris J. Plaintiff, Pump-It, Inc., a California corporation, brought this action against the five brothers as individuals and as a partnership doing business as Alexander Bros. and against all the brothers except John and Mitchell, copartners doing business as Edward J. Alexander, for $5,040.65 for certain patented catsup dispensers sold and delivered to Edward by plaintiff.

At the time of the trial, the brothers lived together in the family home and shared a common office from which they operated a number of businesses. On March 15, 1946, Ferris executed a "certificate of business name" stating that the five defendants were interested in a commercial business under the name and style of "Alexander Brothers," which certificate was filed on the same day in the office of clerk of the district court of Hennepin county. Ferris testified that "Alexander Brothers" was a group of individuals, each doing business under that trade name. It would appear from the record that various enterprises were conducted singly or in groups by the five brothers. It also appears that there was no partnership bank account. The record is somewhat confusing as to the individual trust and bank accounts in various banks. Ferris testified, however, that they were all one family, closely knit; that all the money was more or less a family fund; that if any of his brothers needed some money he would "be glad to give it"; and that if he needed money they would give it to him.

In December 1946, in response to an advertisement, Edward obtained samples and information from plaintiff with a view to entering upon a distributorship of plaintiff's patented catsup dispenser, "Pump-It." After some further correspondence, plaintiff wrote Edward on January 3, 1947, confirming a telephone conversation of December 31, 1946, which letter granted Edward an exclusive distributorship of the dispensers in the Northwest area. Edward agreed to the terms of this letter on January 6, 1947. Pursuant to these terms, some merchandise was shipped and paid for in cash. By letter of January 13, 1947, on "Alexander Bros." letterhead, Edward wrote plaintiff asking that all future correspondence be addressed to him, care "Alexander Bros.," calling attention to the fact, as shown by the letterhead, that the five brothers handled a complete line of general merchandise and asking plaintiff to bill him as the merchandise was shipped to him. Plaintiff immediately contacted its bank in Glendale, California, and asked that they obtain a report on the credit of Edward J. Alexander. The request was transmitted to Minneapolis, and on January 23, 1947, a local representative of Dun & Bradstreet, Inc., called at the office of "Alexander Bros." to obtain the necessary information.

Vernon H. Theyson, the local representative of Dun & Bradstreet, Inc., testified that he had interviewed the brothers in the past relating to their other enterprises; that on this occasion he talked with Ferris and Edward; and that they told him in effect that they were engaged in business with another brother, Nicholas, "using the style Edward J. Alexander and this business would be such as they were to be the distributors of a catsup dispensing tool." He further testified: "When questioned as to what line of business Edward J. Alexander was in, it was reported to me it was a partnership business of three brothers." The witness was asked who signed the written statement (plaintiff's exhibit W) in which Edward J., Ferris J., and Nicholas J. were listed as partners in the business name of "Edward J. Alexander." He replied, "As I recall, it was Ferris." He was then questioned whether Edward signed it and answered, "I would say he did." The statement purports to be

signed "Edward J. Alexander By Ferris J. Alexander." Edward denied signing the statement. Ferris denied that he ever told the credit representative that he, Edward, and Nicholas were copartners in "Edward J. Alexander, Trade Name," and at first denied that he signed any financial statement, but admitted, when shown the statement made to Dun & Bradstreet, Inc., dated January 23, 1947, that he signed it. He claimed, however, that he signed the name "Edward J. Alexander By Ferris J. Alexander" on the statement. At the top of this document is printed, "Statement Made To Dun & Bradstreet, Inc. For the use of Subscribers as a Basis for Credit and Insurance." Written in the blank below, concededly by Theyson, are the words "Alexander, Edward (trade name)." Theyson further testified that he returned to his office and dictated a formal report (plaintiff's exhibit RR); that the part of the report labeled "History" was taken from earlier interviews respecting the partnership "Alexander Brothers"; and that the balance was derived from the interview of January 23, 1947, and his independent investigation. The report was forwarded to the Glendale bank, where it was shown to an officer of plaintiff on February 4, 1947, and shipments were thereafter made to Edward J. Alexander on credit. The evidence is sufficient to demonstrate that the credit was extended in reliance upon the representations which the report contained. The parties have stipulated that $5,040.65 is the unpaid balance due plaintiff for goods shipped to Edward.

The case appears to have been tried on the theory that a partnership in fact existed for the sale of plaintiff's products between Edward, Ferris, and Nicholas, and, if not, that they were estopped to deny their partnership status because they had directly or indirectly represented themselves to plaintiff as such and that plaintiff had acted in reliance on these representations. The trial court granted judgment against Ferris and Edward and dismissed the action as to the other brothers. Edward has not appealed.

While the trial court's findings and conclusions are not too clear, it appears that judgment against Ferris rests on the ground of estoppel rather than on partnership in fact. Although the court

said in its findings that Edward, Ferris, and Nicholas were copartners doing business as Edward J. Alexander, later in the same finding it found an estoppel as to Edward and Ferris only and subsequently dismissed the action as to Nicholas. In its memorandum the court said:

"* * * in equity judgment should be rendered against each and all of the five brothers as individuals and as copartners and although I feel equity is not done unless all are held responsible, nevertheless the doctrine of estoppel to deny the business relationship which exists, against Edward J. Alexander and Ferris J. Alexander, does not exist against the other brothers."

Accordingly, in the absence of a showing that plaintiff knew of or relied upon them, we lay aside evidence of certain actions by Ferris which strongly tended to show that he was a partner in the distributorship of "Pump-It." We shall limit our consideration of the errors assigned by Ferris to those which we believe to be of consequence.

■ In the first place, Ferris contends that the evidence was not sufficient to sustain the finding that he was estopped. In this connection, it is fair to consider certain alleged errors relating to the exclusion of testimony of Ferris and Edward as to what transpired during the interview with Theyson.

The law governing the doctrine of ostensible partnership is clear. M. S. A. 323.15, subd. 1, provides:

"When a person, * * * consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, * * *."

Plainly, this statute declares that a person representing himself as a partner may be equitably estopped to deny that relationship as to those who have in good faith relied on the representation to

their detriment. See, M. S. A. 323.04. The rule, as stated in 5 Dunnell, Dig. § 7348, is as follows:

"Persons not partners inter se may render themselves liable as such, as to third persons, by holding themselves out to be partners; and, on the principle of estoppel, this may be by words spoken or written, or by conduct leading to the belief that they are partners. The person seeking to enforce such a liability must have acted in reliance on such holding out. Parties are held prima facie to be partners as to creditors, upon slighter proof than is necessary to establish that relation among themselves. Evidence of representations, conduct, and circumstances calculated to induce the belief in the existence of a partnership is admissible, and ordinarily the question is for the jury."

The principal basis for the estoppel in the case before us is the representations contained in the Dun & Bradstreet reports (plaintiff's exhibits W and RR). One making statements to an agency dealing in commercial information must know that the information will be communicated to his prospective creditors, who are its subscribers, and such communication is accordingly deemed to be made with his knowledge and consent. Stevens v. Ludlum, 46 Minn. 160, 48 N. W. 771, 13 L. R. A. 270, 24 A. S. R. 210; Irish-American Bank v. Ludlum, 49 Minn. 344, 51 N. W. 1046. Clearly, then, proper proof that Ferris made representations of partnership to Dun & Bradstreet, Inc., would amply sustain the judgment. In this connection, Ferris complains of the exclusion of testimony of himself and Edward as to what representations were made to Theyson during the course of the interview. Inasmuch as Edward had testified previously that he had not been present during the interview, there could be no material error in excluding any testimony which he might offer on that subject.

In connection with the refusal of the court to permit Ferris to testify as to the circumstances surrounding the making of the statement to Dun & Bradstreet, Inc., it is apparent that the court took the position that, inasmuch as Ferris had admitted that he signed

the statement, he was estopped from testifying as to what he told the representative of the agency on or about January 23, 1947. Whether error or not, it is difficult to ascertain from the record before us whether any further testimony from Ferris on that point would have changed the court's decision, since we have here a situation where the testimony of the witness throughout was evasive and stamped with unreliability. Frequently, when confronted with documentary or other convincing evidence, Ferris would contradict or retract his former testimony, sometimes apologizing for mistakes or poor memory.

On the other hand, there is no apparent reason why a disinterested representative of a reputable commercial agency should misrepresent or color the truth. The salability of his employer's service and his position depend upon the accuracy of the reports. These reports are compiled by a regular procedure and enjoy a good reputation in the business community. See, Davis v. Louisville Trust Co. (6 Cir.) 181 F. 10, 30 L.R.A.(N.S.) 1011. This, coupled with the statement containing representations of partnership, the signing of which was admitted by Ferris, conclusively indicates that the representations were made as claimed. This is further strengthened by the fact that Ferris did not, by way of any offer of proof, put into the record for the inspection of this court any plausible explanation for the appearance of his signature on the statement. The case was tried to the court without a jury. In this situation, we have been reluctant to reverse for erroneous rulings on evidence where the result was unaffected thereby. Cf. Greenleaf v. Egan, 30 Minn. 316, 15 N. W. 254; Norton v. Duluth Transfer Ry. Co. 129 Minn. 126, 151 N. W. 907, Ann. Cas. 1916E, 189. An examination of the entire record satisfies us that the evidence justifies the finding of estoppel and that the court's refusal to permit Ferris to testify as to the circumstances in connection with preparation of the statement of January 23, 1947, did not constitute such error as to justify a reversal under the record here.

■ Ferris next contends that the formal report which was forwarded to plaintiff was hearsay and was improperly received. We

cannot agree. Such reports have been excluded as hearsay if introduced as evidence of the truth of the facts therein stated or if introduced as evidence of the making of the statement on which it purports to be based. 36 Am. Jur., Mercantile Agencies, § 4. However, here it was adequately proved by other means that the representations the report contained, insofar as material here, were in fact made by Ferris. Theyson, who assembled the information and dictated the formal report, appeared as a witness, and was available for cross-examination. The signed statement on which the formal report was based was in evidence. The formal report was merely the device by which the information supplied by Ferris in the statement would necessarily be transmitted to plaintiff (Stevens v. Ludlum, 46 Minn. 160, 48 N. W. 771, 13 L. R. A. 270, 24 A. S. R. 210; Irish-American Bank v. Ludlum, 49 Minn. 344, 51 N. W. 1046) and, as such, was admissible. Manly v. Ohio Shoe Co. (4 Cir.) 25 F. (2d) 384, 59 A. L. R. 413; Hulsey v. M. C. Kiser Co. 21 Ala. App. 123, 105 So. 913; Genesee County Sav. Bank v. Michigan Barge Co. 52 Mich. 164, 17 N. W. 790; National Bank of Merrill v. Illinois & Wisconsin Lbr. Co. 101 Wis. 247, 77 N. W. 185. Under the facts and circumstances here, we need not decide whether, in the absence of foundation, the report would be admissible as evidence that Ferris made the statements contained therein, intending that they be communicated to plaintiff, as was done in Davis v. Louisville Trust Co. (6 Cir.) 181 F. 10, 30 L.R.A.(N.S.) 1011, *supra*.

■ Next, Ferris complains of exclusions of testimony bearing on whether there was a partnership in fact. As previously indicated, we believe that the trial court rested Ferris's liability on estoppel. Consequently, evidence of partnership in fact is relevant only so far as it might affect the issue of whether there was a holding out sufficient to create the estoppel. Wise v. Morrissey, 135 Minn. 481, 160 N. W. 487; Rosenbaum v. Howard, 69 Minn. 41, 71 N. W. 823. Under the facts here, there appears to be no prejudice which would constitute reversible error.

■ Lastly, Ferris contends that the trial court erred in permitting plaintiff's officers to repeat statements made to them over the tele-

phone by Edward. Daniel Campbell, plaintiff's secretary, testified that he talked with Edward on December 31, 1946, and that after a conversation he introduced Willard K. Young, plaintiff's treasurer, who had been listening in on an extension. Campbell then testified as follows:

"* * * he [Edward] said, 'We have done a satisfactory job for the Reynolds Pen Company and my salesmen are enthusiastic about it and my father and brothers are in this deal with me and they are enthusiastic about it too.' "

Willard K. Young, testifying by deposition, repeated the above in substance. The motion to strike this testimony as hearsay as to all defendants except Edward was denied.

While it is true that the statement of one person that another is his partner is not admissible to prove that the second person is a partner or that he held himself out as such (Anfenson v. Banks, 180 Iowa 1066, 163 N. W. 608, L. R. A. 1918D, 482; Boosalis v. Stevenson, 62 Minn. 193, 64 N. W. 380; 5 Dunnell, Dig. § 7349), such a statement is admissible to prove that the second party held himself out as a partner if it is shown that it was made with his knowledge and consent. Stevens v. Ludlum, 46 Minn. 160, 48 N. W. 771, 13 L. R. A. 270, 24 A. S. R. 210, supra. See, Brown v. Grant, 39 Minn. 404, 406, 40 N. W. 268, 269; C. E. Johnson & Co. v. Marsh, 111 Vt. 266, 15 A. (2d) 577, 131 A. L. R. 502. While there is no proof that Ferris authorized such statement by his brother, we think that sufficient evidence of the connection between Ferris and Edward was introduced to warrant the court in receiving it for whatever it was worth. After all, this case was tried by the court without a jury. Greater latitude is permissible in the admission of evidence than on a trial by a jury. This distinction was well explained in Mankato Mills Co. v. Willard, 94 Minn. 160, 164, 102 N. W. 202, 203, where this court said:

"If the trial of the issues of fact had been by a jury, the admission of the incompetent evidence would have been reversible error, for the evidence related to a material issue, and, the court having admitted

the evidence, the jury would have been bound to consider it. But this reason does not apply to cases where the issues of fact are tried by the court without a jury. Hence the rule is, where issues of fact are tried by the court without a jury, and incompetent evidence is admitted, but the competent evidence is sufficient to support the findings of fact, and there is no reasonable ground for inferring from the character of the incompetent evidence that it was or might have been a material factor in the court's determination of the fact, the admission of such evidence is not reversible error. 2 Enc. Pl. & Pr. 567; Hogan v. Vinje, 88 Minn. 499, 93 N. W. 523."

See, Fleetham v. Lindgren, 221 Minn. 544, 22 N. W. (2d) 637. Whether the knowledge or consent of Ferris was later sufficiently shown, we do not consider important, in view of the fact that the record contains sufficient competent evidence to support the order for judgment.

Examination of the other assignments reveals no substantial error. The order appealed from is affirmed.

Affirmed.