Kyle BALES and Walter R. Buchanan, d/b/a Buchanan & Bales, Plaintiffs-Respondents,

v.

H. C. LAMBERTON, Defendant-Appellant.

No. 47045.

Supreme Court of Missouri,

Division No. 1.

March 9, 1959.

Fenton Hume, John G. Killiger, Kansas City, for plaintiffs-respondents.

Raymond G. Barnett, Kansas City, for defendant-appellant.

WESTHUES, Judge.

Plaintiffs Kyle Bales and Walter R. Buchanan, as co-partners doing business as Buchanan and Bales, filed suit in the Jackson County Circuit Court to recover $2,280 as a balance claimed to be due them by the defendant H. C. Lamberton on account for old dry batteries sold to defendant. The defendant answered and filed a counterclaim in three counts. In the first count, he asked $24,000; in the second, $2,059.40; and in the third, $15,000. The trial court found for plaintiffs and entered judgment against the defendant for $2,280, the

amount claimed in plaintiffs' petition. The trial court sustained a motion of the plaintiffs to strike from defendant's answer paragraph 5 and all three counts of the defendant's counterclaim. The defendant filed a written declaration to elect to stand on his answer and counterclaim and refused to plead further. The trial court heard evidence in support of plaintiffs' claim. Defendant's counsel refused to participate in that hearing stating to the court that paragraph 5 of the answer contained allegations of fraud which constituted the basis of the answer as well as the three counts of the counterclaim; that the court having sustained the motion to strike had left the defendant without a defense or a basis to support the counterclaim. Defendant's counsel insisted that the court enter judgment without hearing evidence. The trial court, nevertheless, heard plaintiffs' evidence and then entered judgment.

The defendant filed a number of after-trial motions and also filed three separate notices of appeal. We shall make no further reference to these lengthy motions nor further mention the notices of appeal but instead consider the case properly here and determine whether paragraph 5 of defendant's answer states a defense and whether the allegations thereof are sufficient to support defendant's counterclaim.

It is necessary to relate, in substance, the events which caused this lawsuit. The facts to be stated were taken from defendant's answer, particularly paragraph 5 thereof and a number of exhibits which were made a part of defendant's answer. About August, 1947, the War Assets Administration had accepted defendant's bid for a certain lot of old dry cell batteries, about 170 tons in all. These batteries had deteriorated through age and the only value therein was the mercury which could be salvaged. Defendant had equipment in his basement necessary to salvage the mercury in these batteries. It seems that the defendant needed financial help to pay the Federal Government on his contract. He contacted plaintiffs and a contract was signed on August 11, 1947. The substance of this contract was that defendant relinquished his interest in the batteries (which were located in San Francisco, California) to the plaintiffs. Plaintiffs agreed to deposit in the University Bank of Kansas City, Missouri, $16,000 for the purpose of honoring sight drafts attached to bills of lading covering the shipments of the batteries and to pay the expense and freight of shipping them to Kansas City, Missouri. The batteries were to be stored in a bonded warehouse. Defendant agreed to remove them within six months at a total price of $20,000, or at the rate of $120 per ton. Defendant was to pay in advance for the goods taken from the warehouse and when the payments totaled $20,000 the agreement was to be considered at an end. To assure the performance of his contract, the defendant and his wife executed a note in the sum of $6,000 secured by a deed of trust on defendant's home. The condition was that if the defendant completed his contract within six months after the last shipment arrived in Kansas City, then the note and deed of trust should be released and returned to the defendant. If defendant failed to perform his contract, then he was to forfeit the $6,000 to plaintiffs. The last shipment arrived on October 22, 1947. Defendant conceded that he had defaulted in his agreement. Plaintiffs did not exercise their option to take the $6,000 pledged by the defendant, but on October 22, 1948, a second contract was signed by the parties to take the place of the first. The $6,000 note and deed of trust were released and returned to the defendant. In this second contract, it was agreed that plaintiffs were the owners of 165 tons of dry batteries. It was agreed that for a consideration of $6,000 and other payments to be made defendant had the option of purchasing the batteries at $120 per ton; that defendant was to take not less than 8 tons per month. When the amount paid was to total $13,277.-72, the batteries remaining should be conveyed to the defendant without further charge. In paragraph 5 of defendant's answer, it is stated that defendant and his

wife executed a second note of $6,000 payable $100 per month and that defendant paid the note as agreed.

Defendant, in paragraph 5 of his answer, stated that the plaintiffs in truth and in fact did not deposit $16,000 with the bank as agreed but deposited only about $10,000; that plaintiffs used defendant's note and deed of trust of $6,000 to make up the balance of the $16,000 deposited in the bank. It was charged that plaintiffs falsely represented that they would deposit $16,000 and that the use of defendant's note was an embezzlement of the note and such action rendered the entire contract null and void. This briefly stated is the sole basis of defendant's defense and of his three counts of the counterclaim.

It must be noted here that at no time after defendant signed his first agreement was he in a position (nor did he have the legal right) under his contract to demand the return of his note and deed of trust. Even at the time plaintiffs returned this note and deed of trust, the defendant was not entitled thereto. The papers were returned to him at the signing of the second contract whereby defendant was granted further time to perform his part of the undertaking. Granting for the purpose of this case that plaintiffs made a wrongful use of defendant's note by pledging it with the bank to make up the $16,000 they had agreed to deposit, this action did not in any way cause any financial loss to defendant. Suppose we assume that the action of the plaintiffs was fraud. The note was returned to defendant when he signed the second contract. Defendant obtained all he bargained for by his contract. Where a party has not sustained any damages as a result of the fraud charged, it is the general rule that no action for damages may be maintained. 37 C.J.S. Fraud §§ 40, 41 a, b, pp. 288–292, and cases there cited. See also Lammers v. Greulich, Mo., 262 S.W.2d 861, loc.cit. 864(2) (3) (4); Dolan v. Rapenberg, 360 Mo. 858, 231 S.W.2d 150, loc. cit. 155(4).

Defendant, in his brief, under Point I–A., says, "Plaintiffs' fraud, deceit, and unlawful and secret misappropriation of defendant's property, all as alleged in said stricken pleadings, vitiated the title acquired thereby to the batteries in question and 'by operation of law' made of plaintiffs, the holder of said property so acquired, trustees *ex maleficio* (or constructive trustees) for the party (defendant) at whose expense and by the invasion of whose rights said holders thus acquired it." In the argument of the brief of defendant, he says, "We are in that area of the law known by various names which widely overlap and no one of which alone seems fully adequate at times to shelter all of the situations wherein the party in some manner wrongfully dealt with is recognized to be entitled to the law's protection, even though otherwise unclassified. Some of those names are: 'Trusts *ex Maleficio*,' 'Constructive Trusts,' '*Quasi* Contracts,' 'Unjust Enrichment,' 'Restitution,' etc. Defendant has chosen to use the term 'Constructive Trust.' Perhaps one of the other designations would have done just as well." Defendant cited a number of cases to support his theory. We do not find that they are of any aid to him. For example, the case of Suhre v. Busch, 343 Mo. 679, 123 S.W.2d 8, is cited. The court in that case held that the evidence failed to establish a constructive trust and in the course of the opinion, 123 S.W.2d loc. cit. 15(1–3), said: "Upon even a cursory examination of the array of authority on the subject we think it will be found that a constructive trust is the method or formula used by a court of equity as a means of effecting restitution or of rectifying a situation where, as the result of the violation of confidence or faith reposed in another, or fraudulent act or conduct of such other, the plaintiff, who seeks the aid of equity, has been wrongfully deprived of, or has lost, some title, right, equity, interest, expectancy, or benefit, in the property which, otherwise and but for such fraudulent or wrongful act or conduct, he would have had."

The defendant in this case was not deprived of any property by reason of the breach of duty of plaintiffs as alleged in paragraph 5 of defendant's answer. De-

fendant, and not the plaintiffs, was the instigator of the arrangement through which plaintiffs were to finance the buying of the batteries. The $6,000 note was pledged by the defendant to assure his performance of the contract. Plaintiffs did finance the undertaking. It was the defendant who failed to perform his contract. There was no causal connection between the action of plaintiffs' alleged wrong and the defendant's failure to perform his contract or his alleged injury. Defendant was not deprived of any right or of any property by reason of plaintiffs' actions. In Swon v. Huddleston, Mo., 282 S.W.2d 18, cited by defendant, the plaintiffs had at the instance of the defendant been induced to refrain from bidding on property at a sale which resulted in injury to plaintiffs. We have examined the other cases cited by the defendant, Lucas v. Central Missouri Trust Company, 350 Mo. 593, 166 S.W.2d 1053, and Wier v. Kansas City, 356 Mo. 882, 204 S.W.2d 268, and have found nothing therein that supports defendant's theory.

The judgment is hereby affirmed.

All concur.