Paul J. **TOENJES** and Dolores J. **Toenjes**, Plaintiffs-Respondents,

v.

L. J. McNEARY CONSTRUCTION COMPANY, a Corporation, Defendant-Appellant.

No. 32264.

St. Louis Court of Appeals.

Missouri.

July 19, 1966.

Ziercher, Tzinberg, Human & Michenfelder, Clayton, for defendant-appellant.

Sullivan & Joyce, St. Louis, for plaintiffs-respondents.

DOERNER, Commissioner.

Paul J. Toenjes and Dolores J. Toenjes, his wife, sued the L. J. McNeary Construction Company, a corporation, and L. J. McNeary, its principal stockholder, for $9500 actual and $20,000 punitive damages for fraud arising out of plaintiffs' purchase of a house and lot from the Construction Company. The court sustained defendant's motion for a directed verdict at the close of all of the evidence as to McNeary but overruled it as to the corporation. A verdict in favor of plaintiffs for actual damages of $7800 and punitive damages of $1.00 was returned by the jury, and defendant Construction Company appealed from the resulting judgment.

The L. J. McNeary Construction Company was the developer of a subdivision in St. Louis County named Tara South III. Their interest having been aroused by a newspaper advertisement, plaintiffs visited the subdivision on November 14, 1959, and talked to Harry Freeman, one of defendant's salesmen, in the basement of a display house. Plaintiffs selected a lot marked 49 on the plat shown them, and then accompanied Freeman outside to inspect the location they had chosen. Because the street to that point was not paved and the ground was muddy they were unable to walk to Lot 49, but Freeman pointed to an identifying object and told plaintiffs that the lot was in that area. Plaintiffs observed that the lot sloped from the front towards the back, and that the decline was particularly steep at the rear, ending in a creek or drainage canal. Because of the smoothness of the land, which did not look like the natural terrain, Toenjes questioned Freeman about the ground. Freeman assured plaintiffs that there had been no fill placed on the lot except for that which had been obtained when the street was graded, and that the lot was composed of sound and firm ground " * * okay for residential use."

Plaintiffs on the same day signed a sales contract by which they agreed to purchase for $13,600 Lot 49 and a certain type of house to be erected thereon by defendant, and made an earnest money deposit of $10.00. The contract provided that plaintiffs' financing would be through an FHA loan, which defendant was to arrange for them. On December 8, 1959, plaintiffs paid $390 as additional earnest money. In the Spring of 1960, when construction of the house had not begun, Toenjes called defendant's office several times and spoke to a Mr. Boehm. Boehm informed him at different times that there had been a delay in obtaining FHA financing; that the FHA required more soil tests; and that they wanted to make sure that the ground was good and firm. Plaintiffs were under pressure to vacate their apartment, and eventually Boehm told them that since they had to move defendant could obtain a conventional-type loan for them. Accordingly, on June 19, 1960, plaintiffs executed a new sales contract, conditioned on obtaining conventional-type financing, in which the purchase price of the lot and their down payment remained the same, but the additional amount to be paid on the closing was increased from $1600 to $2400, and the peri-

od the loan was to run was reduced from 30 years to 25.

Thereafter defendants built the house and sodded the lot. The sale was closed on September 7, 1960, on which occasion Toenjes again asked Freeman about the lot, whether it was good, firm ground and whether they would have any problem with it, and the latter assured him that it was good, firm ground. Plaintiffs moved in on September 9, 1960. About a month later, the day after a rain, a hole approximately the size of a water bucket appeared in their backyard. Plaintiffs complained to defendant, who filled and sodded it. About a week later a much larger hole appeared in the same spot, and though defendant promised to again repair it the hole was not filled. In the latter part of November, on a Sunday morning, defendants were awakened by a sound like a huge waterfall, and upon looking out the window towards their backyard saw a column of water shooting up 2 to 3 feet high at the place where the previous holes had developed. The water then ran down the slope to the drainage canal at the rear of the lot. Toenjes contacted defendant, and after some delay four of defendant's employees came to the scene. In December or January, 1961, defendant filled in the hole and the gully which had been eroded with dirt, logs, boards and rocks, and resodded the area. On Sunday, March 19, 1961, after it had rained the previous day, a column of water again shot out of the ground at the same place and washed out a much larger hole. Defendants were advised of the second erosion but did not correct it and it remained at the time of trial. Mr. Lawrence McNeary, president of defendant Construction Company, told Toenjes that the water was coming from a sink hole located on the property of Behnke Builders, another developer. In April, 1961, a second washout occurred at still another place, partly on the western side of plaintiffs' lot but the major portion on lot 48 owned by their neighbors, the Desnoyers. In September, 1962, a stilling basin and standpipe was built by the Con-

struction Company in the washout between lots 48 and 49, with an outlet to the drainage canal. Since the stilling basin was built no water has erupted from the original washout on plaintiffs' lot, but when it rains heavily the soil erodes into the hole, which measured 27 feet at its widest part and is 28 feet from the rear of their house. Toenjes has used rocks and wood in an attempt to prevent further erosion and erected a fence around the hole to protect their young children.

Patterning their two verdict directing instructions after MAI 23.05, plaintiffs hypothesized in Instruction No. 3 that defendant represented to them that Lot 49 was composed of sound and firm ground for residential use, and in Instruction No. 5 that there was no fill on Lot 49 other than what was taken from the grading of the street in the subdivision. Those instructions are the subjects of defendant's first two points, which we will consider in the order presented.

The nine elements and essentials of an action for fraud are so well known as not to require reiteration. Yerington v. Riss, Mo., 374 S.W.2d 52, 57; 37 C.J.S. Fraud § 3, pp. 215, 216. The first is that the representation relied on was made. Defendant readily concedes in its brief that plaintiff produced direct evidence that both of the hypothesized representations were made. But as to the second element, that of the falsity of the representation, defendant initially contends that the trial court erred in overruling its motion for a directed verdict, and in submitting Instruction No. 3 to the jury, since the evidence failed to show that Lot 49 was not composed of sound and firm ground for residential use. This assignment necessitates a further statement of the evidence.

Howard Weinreich, plaintiffs' witness, who had lived for 24 years on an adjoining tract, testified that he was familiar with defendant's land before it had been subdivided, and that he had hunted on it many times during that period. He stated that

prior to the grading there had been a 4 foot deep cavity or washout in the rock in the vicinity of the present Lots 48, 49 and 50, and that after a rain water came out of an opening, visible in the rock, and washed down the hill to the creek. It took about an inch of rainfall to result in water being emitted from the opening, he said, and the amount discharged varied with the amount of rain. Weinreich related that he saw the grading done when the defendant was developing the subdivision and that fill was placed on Lots 48, 49 and 50 to a depth of 20 feet in places. He stated in effect that the place where the water came out of the rock before the development was the same place from which it erupted after the development, and explained that he could locate the area by sighting down a driveway on an adjoining tract. On cross-examination, when asked whether there was any other way he could locate the area, he answered: "Well, sir, I kind of watched that spot because I expected them to have trouble with that amount of water that came out of there at times I seen. I thought they would probably have trouble filling it up."

Defendant takes the position that the representation proven related solely to the compaction of the fill that was placed on the lot, and in that connection stresses its own evidence to the effect that the fill was compacted to comply with the standards of the FHA. We do not share defendant's narrow view. The representation proven and hypothesized in Instruction No. 3 was not merely that Lot 49 was composed of sound and firm ground, but that it was sound and firm ground "for residential use." As plaintiffs point out, the representation went to the entire lot, and was not confined to that portion upon which the house was built. And the quoted phrase is important, for "* * * The truth or falsity of representations is to be judged in the light of the meaning which plaintiff would reasonably attach to them in the existing circumstances. * * *" 37 C.J.S. Fraud § 17, p. 251, and the words employed must be considered against the background and in the context in which they were used. Emily v. Bayne, Mo.App., 371 S.W.2d 663. Here plaintiffs were interested in buying a home for themselves and their children, and their inquiries were directed towards ascertaining the suitability of the lot for that purpose. Defendant assured them, according to plaintiffs' evidence, that the ground was sound and firm, "* * * okay for residential use." Among other meanings ascribed to the word "sound" is "Free from flaw, defect, or decay; perfect of the kind; undamaged or unimpaired; * * *" Webster's New International Dictionary, Second Edition. Regardless of how well the defendant may have compacted the fill on Lot 49, we are of the opinion that from plaintiffs' evidence that the fill was placed over a hole or cavity from which underground water was emitted after a rain, the jury could reasonably find that the lot was not composed of sound and firm ground, suitable for residential use. And since the plaintiffs' evidence was sufficient to make a submissible case as to that representation, the trial court did not err in overruling defendant's motion for a directed verdict, or in submitting Instruction No. 3 to the jury.

The representation submitted in Instruction No. 5, it will be recalled, was that there was no fill on Lot 49 other than what was taken from the grading of the street. We note, in passing, that that representation was not pleaded in plaintiffs' petition, but no complaint on that score was raised below or is made here. Pointing to the sixth paragraph of the instruction, which required the jury to find that as a direct result of such representation the plaintiffs were damaged, defendant contends that the court erred in overruling its motion for a directed verdict, and in submitting Instruction No. 5 to the jury, since the evidence failed to show that the fill, regardless of its source, was the cause of plaintiffs' damage. Inasmuch as we have held that plaintiffs made a submissible case on the representation hypothesized in Instruction No. 3, and defendant's motion for a directed verdict was

general in nature, it follows that the court did not err in overruling defendant's motion. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91; Nelson v. Wabash R.R. Co., Mo., 300 S.W.2d 407.

■ However, the sufficiency of the evidence to support the giving of Instruction No. 5 presents a more serious question. The ninth and last essential element of actionable fraud is that of the hearer's proximate and consequent damage. Yerington v. Riss, Mo., 374 S.W.2d 52; 37 C.J.S. Fraud § 3, p. 216. As stated in 23 Am.Jur., Fraud and Deceit, § 172, p. 987, quoted with approval in Lammers v. Greulich, Mo., 262 S.W.2d 861, 864: " * * * 'In contradistinction with trespass and other direct injuries for which the complainant is awarded nominal damages if he should fail to plead and prove actual damage, deceit belongs to that class of tort of which pecuniary loss constitutes a part of the cause of action.' * * *" Hence proof of substantial injury and damage is essential to recovery in an action for fraud and deceit, Dolan v. Rabenberg, 360 Mo. 858, 231 S.W.2d 150; and since a failure to establish any one of the essential elements of fraud is fatal to a recovery, Powers v. Shore, Mo., 248 S.W.2d 1; Bayer v. American Mut. Cas. Co., Mo., 359 S.W.2d 748; the general rule is that no action for damages may be maintained where the plaintiff has not sustained any damages as a result of the fraud charged. Bales v. Lamberton, Mo., 322 S.W.2d 136; Dolan v. Rabenberg, supra.

■ It is important to note the narrow scope of the representation hypothesized in Instruction No. 5. The representation submitted therein was not that *no* fill had been placed on Lot 49. It could not have been, for from Toenjes' own testimony it is apparent that at the time he first viewed the lot he was fully aware that the natural terrain had been altered, and that some fill had been placed on the plot. Nor did the representation relate to the *depth* of the fill. The representation actually proven, and submit-

ted in Instruction No. 5, related solely to the *source* of the material; i. e., that the only fill on Lot 49 was that which had been derived from the grading of the street. While there was some evidence that the more elevated part of the subdivision was graded down, the record is far from clear as to the actual source of the fill which was placed on Lot 49. But assuming that the representation was false, since no issue of its falsity is raised, and that the fill placed thereon came from some source other than the street, we are unable to see how that fact caused the plaintiffs to suffer any injury or damage. The real cause of their damage was that fill had been placed over a natural outlet from which water was emitted after a substantial rainfall. The washout which occurred on plaintiffs' lot was the inevitable result of water seeking release. The eruption of the water and the hole which resulted would have happened whether the fill came from the street or from another source. Hence there was no causal connection shown between the representation hypothesized and the plaintiffs' injury. Bales v. Lamberton, Mo., 322 S.W. 2d 136. Nor was there any evidence that the damages sustained were the direct and proximate result of the fraud submitted. Bell v. Butte Investment Co., Mo., 250 S.W. 381. Lacking such proof no action on the representation submitted could be maintained. Mills v. Keasler, Mo., 395 S.W.2d 111; Bales v. Lamberton, supra; Lammers v. Greulich, Mo., 262 S.W.2d 861. And since there was no evidence to support the giving of Instruction No. 5 its submission constituted prejudicial error. Adams v. Kendrick, 321 Mo. 310, 11 S.W.2d 16; Hart v. Midkiff, Mo., 321 S.W.2d 500; Switzer v. Switzer, Mo., 373 S.W.2d 930.

■ On the measure of damages plaintiff offered and the court gave Instruction No. 7, copied from MAI 4.01, by which the jury was told that if it found the issues in favor of plaintiffs then it must award them such sum as it believed would fairly and justly compensate plain-

tiffs for any damages it believed they sustained, " * * * and are reasonably certain to sustain in the future * * *" as a direct result of the occurrence mentioned in the evidence. Defendant asserts that the court erred in giving Instruction No. 7 for the same reason urged as to Instruction No. 5, that the plaintiffs failed to prove that any damage resulted from the representation submitted in the latter instruction. What we have said regarding Instruction No. 5 applies with equal force to the submission of Instruction No. 7. Defendant also complains that it was prejudicially erroneous to include the quoted words concerning future damages (bracketed as optional in MAI 4.01 and footnote 2) because plaintiff failed to introduce any evidence as to such damages. As plaintiffs point out, no specific objection of that nature was made at the trial before submission to the jury, and no such specific allegation of error was set forth in defendant's motion for a new trial. Accordingly, the objection was not preserved for review. Civil Rule 79.02, V.A.M.R.; Moll v. Springdale Park, Inc., Mo., 395 S.W.2d 126.

The remaining assignments concern matters not likely to again occur in the event of a new trial, and therefore need not be considered.

For the reasons stated the judgment is reversed and the cause remanded.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment is reversed and the cause remanded.

ANDERSON, Acting P. J., RUDDY, J., and LACKLAND BLOOM, Special Judge, concur.