# CONSOLIDATED FOODS CORPORATION, d.b.a. BOOTH FISHERIES AND ANOTHER, v. A. M. PEARSON AND ANOTHER.

178 N. W. (2d) 223.

June 12, 1970—No. 42037.

*Thomson, Lovett, Wahlfors & Moran* and *James L. Wahlfors,* for appellants.

*Stringer, Donnelly, Allen & Sharood* and *Philip Stringer,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

SHERAN, JUSTICE.

Appeal from a judgment of the district court and an order denying a motion for a new trial.

Appellants, A. M. Pearson and his wife, Eva M. Pearson, were the sole owners and principal officers of a now defunct corporation called Sunbreak, Inc., whose business included the marketing of eggs. On December 9, 1966, Pearson submitted to respondent a financial statement for Sunbreak on the basis of which respondent authorized a line of credit not to exceed $25,000 in connection with an arrangement whereby Sunbreak placed its produce in cold storage at respondent's warehouse in St. Paul pending sale. Storage charges and advances made by respondent to Sunbreak pursuant to the credit authorization were to be secured by the stored produce. The financial statement purported to be taken from the corporate books and records as of September 10, 1966, showed assets of $340,000; liabilities of $195,000; and a net worth of $145,000. The financial statement did not disclose that all or substantially all of the claimed assets were either unowned, or pledged, assigned, mortgaged or otherwise encumbered as security for loans and advances made to Sunbreak principally by the Bank of Ellsworth at Ellsworth, Wisconsin, Sunbreak's principal place of business.

On May 31, 1967, Sunbreak filed a petition in bankruptcy after the Bank of Ellsworth had seized Sunbreak's accounts receivable and the balance in its checking account pursuant to an assignment thereof not disclosed in the September financial statement. These events resulted in a loss to respondent of about $22,000 because, at the time the accounts receivable were seized,

respondent had released a part of the produce stored in its St. Paul warehouse in exchange for checks of the corporation drawn on the Bank of Ellsworth. These checks became worthless when the bank applied the balance in the corporate bank account against the corporation's debts to the bank. There were no assets available in the bankruptcy proceedings for the discharge of the amount due respondent.

The trial court held that the failure of the Pearsons to disclose that substantially all of the corporate assets were pledged, assigned, or mortgaged to secure its debts constituted a material misrepresentation as a matter of law and instructed the jury to find in respondent's favor for its damages if respondent, acting in reasonable reliance on the representations, sustained a provable loss. The jury found for respondent. Post-trial motions were denied, judgment was entered, and this appeal was taken.

In summary, appellants contend:

(1) The trial court erred in holding that the failure of appellants to disclose encumbrances existing at the time when the financial statement was submitted on December 9, 1966, constituted a material misrepresentation as a matter of law.[1]

(2) The jury was not justified in finding that the loss sustained by respondent was proximately caused by the failure to disclose the encumbrances.

(3) Apart from the merits, prejudicial error resulted because (a) a specific claim of fraud in failing to disclose the existence of encumbrances was not pleaded in the complaint, and (b) the trial court erred in restricting appellants in their effort to introduce evidence the object of which was to explain apparent discrepancies between assets listed in the September 10, 1966, financial statement and the information appearing in the petition for bankruptcy.

---

[1] Swedeen v. Swedeen, 270 Minn. 491, 134 N. W. (2d) 871; 37 Am. Jur. (2d) Fraud and Deceit, § 162.

In our opinion, the judgment must be affirmed for these. reasons:

■ The trial court correctly held that the failure to disclose that all or substantially all the assets listed on the financial statement had been pledged, assigned, mortgaged or otherwise encumbered as security for loans constituted a fraudulent concealment as a matter of law. In Penn Anthracite Min. Co. v. Clarkson Securities Co. 205 Minn. 517, 521, 287 N. W. 15, 17, it was held that where accounts receivable were listed in a financial statement in an exaggerated amount and there was a failure to disclose "that a large part of the receivables had been assigned * * * as security for advances made," there was a demonstration of the "deceptive and damaging power of silence where there is imperative duty to speak the truth," constituting fraud as a matter of law.[2] Under the circumstances disclosed by the record here, it is our opinion that the trial court correctly instructed the jury as follows:

"The purpose of a financial statement, when furnished to a prospective creditor, is to represent to the creditor the nature and extent of the assets which might be available in the event of financial stress; and the Court charges you, as a matter of law, that failure to disclose the fact that a substantial part of the assets described in a financial statement are mortgaged or pledged to certain creditors to secure payment of their account is a material misrepresentation."

It is not disputed by appellants that they submitted the financial statement to respondent; that respondent relied on the financial statement in approving the loan; and that appellants were aware of the encumbrances on the assets of Sunbreak, Inc.

---

[2] S. E. C. Reg. S-X, Rule 3-19(a); Grady, American Institute of Certified Public Accountants, Inc., Accounting Research Study No. 7, Inventory of Generally Accepted Accounting Principles for Business Enterprises, Principle C-6; see, Forbes v. Auerbach (Fla.) 56 So. (2d) 895; National Gypsum Co. v. Robinson, 11 App. Div. (2d) 1004, 206 N. Y. S. (2d) 253; Annotation, 104 A. L. R. 921.

Therefore, if the loss sustained by respondent was caused by the concealment of the encumbrances, the verdict should stand.[3]

■ The jury was justified in finding that the loss sustained by respondent was proximately caused by the failure to disclose the fact that substantially all of appellants' assets were pledged, assigned, mortgaged, or otherwise encumbered at the time the financial statement was submitted by appellants in December 1966.[4]

To us it is clear that the jury could have reasoned on the basis of the evidence in this way:

(a)  Respondent would not have authorized a line of credit up to a maximum of $25,000 had appellants disclosed the fact that substantially all of their assets were encumbered. It seems obvious that a prospective debtor whose business assets can be tied up summarily by reason of outstanding credit instruments whenever his creditor deems himself insecure is an extremely poor prospect for a loan or advance.

(b)  The responsible employee of the respondent corporation would not have released stored produce of Sunbreak which respondent had a right to hold as security for advances and storage charges in exchange for uncertified Sunbreak checks were it not for the fact that the responsible officer of respondent corporation had stated, in effect, that Sunbreak was a good credit risk up to a maximum of $25,000.

(c)  The loss sustained by respondent resulted directly from the release of stored produce owned by Sunbreak in exchange for such checks. The checks proved worthless. The stored produce, when sold, was represented by an account receivable owing

---

[3] Davis v. Re-Trac Mfg. Corp. 276 Minn. 116, 149 N. W. (2d) 37; Hollerman v. F. H. Peavey & Co. 269 Minn. 221, 130 N. W. (2d) 534; Spiess v. Brandt, 230 Minn. 246, 41 N. W. (2d) 561; Prosser, Torts (3 ed.) § 103.

[4] Hanson v. Ford Motor Co. (8 Cir.) 278 F. (2d) 586; Toho Bussan Kaisha, Ltd. v. American President Lines, Ltd. (S. D. N. Y.) 155 F. Supp. 886, affirmed (2 Cir.) 265 F. (2d) 418, 76 A. L. R. (2d) 1344; Toenjes v. L. J. McNeary Const. Co. (Mo. App.) 406 S. W. (2d) 101.

to Sunbreak. The Bank of Ellsworth acquired this account receivable pursuant to the undisclosed assignment. Thus respondent was left with an unsecured debt owed by a corporation which had gone out of operation following the seizure of its assets.

The suggestion made by appellants that the stored produce might have been released whether the credit was authorized or not is a possibility, of course, but we do not believe that the jury was compelled to find this possibility to be a fact.

■ We do not consider the remaining claims of error asserted by appellants to be of such significance as would require a new trial. It is true that the complaint in an action based upon fraud should specify in detail the fraudulent assertion or omission upon which the cause of action is premised.[5] The complaint in this case does not allege specifically that the fraudulent nondisclosure that the assets were pledged, assigned, or encumbered constituted a principal basis for the claim of fraud. However, the matter was clearly at issue during the progress of the trial and appellants were given ample opportunity to contest the claims of respondent in this respect. The failure to disclose that substantially all the assets were pledged, assigned, or mortgaged is not disputed. The effect of this failure to disclose seems quite obvious. It was an undisclosed assignment of accounts receivable which provided the vehicle by which the Bank of Ellsworth was able to seize the proceeds of the sale of produce which had been released from respondent's warehouse in exchange for checks which proved worthless. It was the bank's capacity as a secured creditor to tie up the assets of Sunbreak that put Sunbreak in a position where it became necessary to file a petition for bankruptcy. These circumstances in combination resulted in the loss the jury has found respondent entitled to recover from these appellants. In this situation, the failure to specify in the complaint that it was nondisclosure in the financial statement which caused respondent's loss does not seem fatal to the integrity of the trial.

---

[5] Rule 9.02, Rules of Civil Procedure; O'Brien v. Kemper, 276 Minn. 202, 149 N. W. (2d) 487.

It is true that the trial court by its rulings restricted appellants' efforts to explain the apparent variance between (a) representations made in the bankruptcy petition and the summary attached thereto and (b) the financial statement submitted the previous December. But we do not believe that the rulings made by the trial court with respect to appellants' offers of proof affected the outcome of this case. Reversal for nonprejudicial error is not justified.[6]

Affirmed.

---

[6] Rule 61, Rules of Civil Procedure; Pump-It, Inc. v. Alexander, 230 Minn. 564, 42 N. W. (2d) 337.