Wilford Henry GERDIN, Respondent,

v.

PRINCETON STATE BANK, Louis L. Hoffman, et al., petitioners, Appellants.

No. CX–85–204.

Supreme Court of Minnesota.

April 11, 1986.

Michael B. LeBaron, Charles L. Nail, Minneapolis, for Princeton State Bank.

Phillip A. Cole, Kay Nord Hunt, Minneapolis, for Louis L. Hoffman & John C. Hoffman.

William S. Rosen, St. Paul, for respondent.

YETKA, Justice.

Respondent Wilford Gerdin brought suit against appellants Princeton State Bank, Louis L. Hoffman and John C. Hoffman on July 18, 1984, in Sherburne County District Court. Appellants moved for summary judgment, which was granted on January 9, 1985. Respondent appealed to the Min-

nesota Court of Appeals, which reversed and remanded the district court order on July 9, 1985. Appellants separately petitioned this court for further review. We affirm the court of appeals for the reasons stated in this opinion.

On August 1979, Gerdin Transfer, Inc., secured an obligation to the Princeton State Bank by mortgaging its building and land located in Princeton, Minnesota. This property had been purchased in 1949–50 by the company, which was, at that time, owned by two brothers, Wilmer and Wilford Gerdin. In 1953, Wilmer Gerdin bought out Wilford Gerdin's interest in the company and mortgaged the building to the Princeton Bank.

In addition to the bank mortgage, there were two liens against the property for unpaid federal and state taxes in excess of $46,000. These junior liens were recorded in 1980 and 1982 and appear on the abstract of title.

Gerdin Transfer defaulted in 1983. The debt left outstanding was $52,495.39, and the fair market value of the property was approximately $70,000.

To handle the foreclosure, the Princeton State Bank hired attorneys Louis and John Hoffman. John Hoffman published a notice of the foreclosure sale on January 25, 1983, announcing that the Gerdin Transfer property would be sold at public auction conducted by the Sherburne County Sheriff on March 31, 1983. However, Hoffman did not serve the written notice required by 26 U.S.C. § 7425(c)(1) (1982) and by Minn.Stat. § 270.69, subd. 7 (1984) that would allow discharge of the junior tax liens following the redemption period. In his affidavit, John Hoffman maintains that he had no knowledge prior to the foreclosure sale of the junior state and federal tax liens encumbering the property.

Only the sheriff, Attorney John Hoffman and Wilford Gerdin attended the auction. Gerdin claims he appeared due to curiosity and had no intention to bid. Gerdin and Hoffman spoke before bidding began, and Gerdin became interested in the property. Gerdin describes their conversation as follows:

Q Now when you arrive [sic] did you talk to anybody?

A Just to John.

Q What did you say to John, do you recall?

A Well, we talked about the sale of the building, and he said he had a price of fifty-five thousand some dollars, and if we bid a dollar more why he wasn't going to raise it—that was his top price, and if there were no other bidders I would get it.

Q Okay.

A Then the sheriff came in and asked if I had the cash or certified check, and I said no I didn't have it with me, and he said well, I would have to have a certified check if I was going to bid. Then I asked him how much, and he said well, one dollar over, and I said, "I will make it ten over then," so it was $55,085 I believe.

In his deposition, Gerdin admits that Hoffman made no direct representations concerning the title.[1] Hoffman gives substantially the same description of their conversation. The auction was postponed to allow Gerdin time to obtain the certified check. He went to the Princeton State Bank, where he talked to Art Skarolid, a bank employee. Gerdin describes the transaction as follows:

12. When I went to the bank to get a certified check to give to the sheriff at the foreclosure sale, I told Mr. Art Skarolid, a person that I knew was in a

---

1. In an affidavit, Gerdin states:

7. I believed that Mr. Hoffman's statement to me that I could own the property for $1.00 more than the bank's bid, and that the bank would not overbid me, was advice from a respected lawyer in the community to buy the property.

8. Mr. Hoffman's statement to me that the bank would not overbid me convinced me that there would be no competitive bidding and that I would be the buyer for the low price of $1.00 over the amount of the mortgage.

supervisory position at the bank, that I needed the certified check for the purpose of buying the mortgaged property involved in this case. I told Mr. Skarolid that Mr. Hoffman told me that I could buy the property for $1.00 over the bank's bid, and I told Mr. Skarolid that was the reason that I wanted the check.

13. Mr. Skarolid told me that I did not have enough money in my checking account to cover the check. I told him that I was in a big hurry because they were waiting for me at the sale. My account was $10,585.00 short, but Mr. Skarolid gave me the certified check anyway so that I could get to the sale on time. It was agreed between me and Mr. Skarolid that the bank would lend me the difference between the amount in my checking account and the amount of the certified check until I could arrange to cover the shortage.[2]

Gerdin made no investigation concerning the property, but returned to the auction, bid $10 over the bank and acquired the property. He did not learn of the tax liens until his wife obtained the abstract from the Hoffman law office on April 6, 1983.

Gerdin claims that, upon learning of the junior tax liens, he spoke to the president of the Princeton State Bank, Westly Geurkink. According to Gerdin, the bank president told him that Hoffman knew of the junior liens before the auction, and he advised Gerdin to institute suit against Hoffman so the bank could also assert its claims against the attorney.[3]

Gerdin filed suit against the Princeton State Bank and John and Louis Hoffman on January 9, 1984, in Sherburne County District Court. He sought rescission of the sale and restitution of the purchase price. Gerdin alleged that the Hoffmans were liable due to breach of the attorney-client relationship that existed between himself and John Hoffman at the foreclosure sale and due to their negligent failure to discharge the tax liens. The bank was alleged to have breached its duty either to extinguish the tax liens or disclose their existence. He maintained that all defendants induced him to purchase the property, that he relied upon these representations, and that the defendants were unjustly enriched. Gerdin also claimed mutual mistake of material fact. The defendants denied all liability, and the bank cross-claimed against

---

**2.** Skarolid gives the following description of the transaction:

> 2. On or about March 31, 1983, Wilford Gerdin came to the bank and asked for a certified check in the amount of $55,085.00, which I obtained for him.
>
> 3. Mr. Gerdin's visit lasted no more than five minutes. During this time, he advised me that the check was to be used to bid on certain property being foreclosed against by the bank, but to the best of my recollection, he made no further reference to the property being sold and asked me no questions about the property or anything relating to its sale.
>
> 4. At the time of Mr. Gerdin's visit, I had no knowledge of the condition of title to the property being sold, the circumstances leading up to its sale, or anything else about the property, other than the fact that it was being sold.

**3.** Gerdin's affidavit gives the following description of his conversation with Geurkink:

> 9. Mr. Geurkink told me that when the matter of the foreclosure of the mortgage was turned over to the Hoffman law firm, the lawyers were advised about the existence of the junior tax liens. Mr. Geurkink also told me that he agreed with the conclusion of the

IRS that the value of the mortgaged property was sufficient to pay the mortgage debt, but less than the amount of the mortgage debt plus the tax liens.

> 10. When I talked with Mr. Geurkink after the foreclosure sale, he told me that the entire matter was the Hoffmans' fault. He said that the purpose of the foreclosure was to acquire clear title, and that the Hoffmans should have foreclosed properly to extinguish the tax liens.
>
> 11. Mr. Geurkink told me that he was sorry about what had happened, and he told me that I should start a lawsuit so that the bank could assert its claims against the Hoffmans. Mr. Geurkink told me that he thought it was unfair for me to suffer the loss when the entire matter could have been prevented if the Hoffmans had properly foreclosed the mortgage as the bank had expected.
>
> \* \* \* \* \* \*
>
> 14. Mr. Geurkink told me that the Abstract of Title to the mortgaged property was delivered to the Hoffman law firm before the foreclosure proceedings were started. My wife picked up the abstract from the Hoffman law firm a few days after the foreclosure sale.

the Hoffmans on grounds that they neglected to obtain effective and complete foreclosure.

The defendants moved for summary judgment, and the district court granted the motion. The court found the record devoid of any basis for finding that an attorney-client or any other fiduciary relationship existed between Hoffman and Gerdin. Furthermore, the court ruled that there was no duty to disclose since no statuory, common law, or trade custom made the existence of the liens a fact basic to the transaction that a buyer would reasonably expect to be revealed. The court also found that the defendants made no affirmative misrepresentations. It did not address the issue of mutual mistake of material fact. Gerdin appealed to the Minnesota Court of Appeals.

The court of appeals reversed and remanded the district court order. *Gerdin v. Princeton State Bank*, 371 N.W.2d 5 (Minn.Ct.App.1985). While the court upheld the district court's finding that no attorney-client relationship existed between Hoffman and Gerdin, it reversed the order on the grounds that the bank had a legal duty to disclose the existence of the tax liens. The court refused to apply strictly the rule of caveat emptor where misrepresentation by way of non-disclosure of relevant facts had been alleged. The court found that the bank, since it knew about the liens, had a duty to disclose their existence. Whether Hoffman knew of the liens, the court stated, is a question of fact to be determined by the jury. Finding that it was reasonable for Gerdin to assume that the liens were discharged or would be disclosed, the court ruled that the bank and its agent had a duty to disclose the existence of the tax liens.

The bank and the Hoffmans separately petitioned this court for further review.

The issues raised by appellants are:

1. Whether the court of appeals correctly found that, as a matter of law, no

attorney-client relationship existed between Hoffman and Gerdin;

2. Whether, under the factual circumstances set out above, the bank and its attorneys had a duty to disclose the existence of the tax liens?

We deem it not necessary to address these issues since we hold that Gerdin is entitled to set aside the foreclosure sale because the sale itself was fatally flawed and is, therefore, voidable.

The purpose of a mortgage foreclosure sale, whether by action or by advertisement, is "to terminate all interests junior to the mortgage being foreclosed and to provide the sale purchaser with a title identical to that of the mortgagor as of the time the mortgage being foreclosed was executed." G. Osborn, G. Nelson & D. Whitman, *Real Estate Finance Law* § 7.19 (1979). Foreclosure by advertisement, as was the case here, is designed to accomplish this purpose with substantial savings in time and money. *Id.*

Notice requirements for foreclosure by advertisement vary. Some states and the Uniform Land Transactions Act, § 3–508(a), 13 U.L.A. 545, 702 (1975) require notice by mail or personal service to all persons having a recorded interest in the land being foreclosed. Minnesota, however, does not have these notice requirements. Minn.Stat. § 580.03 (1984) requires only 6 weeks' published notice and service thereof upon the person in possession of the mortgage premises.

▮ While junior lienors are not, in general, entitled to individual notice of foreclosure,[4] state and federal junior tax liens will not be extinguished unless notice is given to the respective governments. Thus, Minn.Stat. § 270.69, subd. 7 (1984) mandates that notice of the mortgage foreclosure sale "shall be mailed to the commissioner not less than 25 days prior to the foreclosure * * *." *See also* 26 U.S.C. § 7425(b)(2)(A).

Not only does both state and federal law require that notice "shall be mailed," but

---

**4.** *But see Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (mortgagee, whose interest may be elimi-

nated by tax sale, is entitled to notice reasonably calculated to apprise it of impending sale).

the purchaser of the foreclosure sale is entitled to an affidavit from the person foreclosing the mortgage, or his attorney, or someone with knowledge of the facts that the notice has been properly given to the federal government. Minn.Stat. § 580.-15(4) (1984).[5] Furthermore, the purchaser is entitled to a sheriff's certificate of sale which is "prima facie evidence that all the requirements of law in that behalf have been complied with * * *." Minn.Stat. § 580.19 (1984).

Failure to serve notice of foreclosure on the government results in the purchaser, at the foreclosure sale, taking subject to the formerly junior tax liens. In other words, a junior tax lien remains on the property and is elevated to senior status while junior non-tax liens are eliminated so foreclosure without notice to the government fails to accomplish a critical purpose of mortgage foreclosure, a purpose which the purchaser has a right to assume will be accomplished.

■ Having purchased the property at the foreclosure sale, plaintiff Gerdin was entitled to receive, along with the sheriff's certificate of sale, other evidence of the sale, including attorney Hoffman's affidavit that the tax lien notice had been mailed to the governments pursuant to the mandate of the law. Hoffman and the bank are unable to furnish the affidavit. Therefore, the purchaser is entitled to have the sale set aside.

The bank and its attorneys argue that Gerdin is deemed to have constructive knowledge of all recorded liens and encumbrances. Had Gerdin checked the property's title, he would have found two tax liens which were *junior* to the mortgage. Because they were junior liens, Gerdin would have been justified in assuming they would be eliminated (subject only to a right of redemption) by the foreclosure sale. It should be emphasized that a search of title by Gerdin would *not* have indicated whether notice had been sent to the state and federal governments. Because the failure to give notice to the government would not have been discovered by a title search, the doctrine of caveat emptor is inapplicable.

While the power to foreclose by advertisement derives from a power of sale clause in the mortgage agreement, the exercise of that power must comply, at least substantially, with the statutory requirements. *See Lowell v. North,* 4 Minn. 32, Gil. 15 (1860) (failure to publish notice required by statute entitles mortgagor to damages or to have sale set aside); *Sheasgreen Holding Co. v. Dworsky,* 181 Minn. 79, 231 N.W. 395 (1930) (failure to record power of attorney before sale, as required by statute, renders sale void);[6] *Clark v. Kraker,* 51 Minn. 444, 53 N.W. 706 (1892) (failure to separate homestead tract, as required by law, renders sale voidable, but not void). In this case, the mortgagee's failure to comply with mandatory statutory language ("shall be mailed") should render the sale voidable by the purchaser because, as discussed above, failure to give notice to tax lienors makes the foreclosure sale fail its essential purpose.[7]

---

**5.** Minn.Stat. § 580.15 (1984) provides:

Any party desiring to perpetuate the evidence of any sale made in pursuance of this chapter may procure:

    \*    \*    \*    \*    \*    \*

(4) An affidavit by the person foreclosing the mortgage, or his attorney, or someone having knowledge of the facts, setting forth the fact of service of notice of sale upon the secretary of the treasury of the United States or his delegate in accordance with the provisions of Section 7425 of the Internal Revenue Code of 1954 as amended by Section 109 of the Federal Tax Lien Act of 1966, and also setting forth the fact of service of notice of sale upon the commissioner of revenue of the state of Minnesota in accordance with the

provisions of section 270.69, subdivision 7. Any such affidavit recorded prior to May 16, 1967 shall be effective as prima facie evidence of the facts therein contained as though recorded subsequent to May 16, 1967.

**6.** This result is in spite of the fact that a title search would have shown the failure to record the power of attorney, which raises the further question, not before us here, whether caveat emptor is applicable to noncompliance with statutory foreclosure procedures.

**7.** The bank can bring a new foreclosure proceeding. *See Bottineau v. Aetna Life Insurance Co.,* 31 Minn. 125, 16 N.W. 849 (1883) (void foreclosure sale does not prevent a second attempt).

The court of appeals is affirmed for the reasons stated in this opinion.