Arthur J. VACINEK, et al., Appellants,

v.

**FIRST NATIONAL BANK OF PINE CITY, Respondent.**

No. C1–87–743.

Court of Appeals of Minnesota.

Dec. 15, 1987.

Barry L. Blomquist, North Branch, for appellants.

Dwight Sherwood McKinnis Parker, Satrom, O'Neil, Lindberg and Sauter, Ltd., Cambridge, for respondent.

Considered and decided by HUSPENI, P.J., and SEDGWICK and LOMMEN,* JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellants, Arthur and Barbara Vacinek, husband and wife, appeal from an order denying their motions for a judgment notwithstanding the verdict or a new trial. The jury, by special verdict, found that respondent made a false representation to appellants but that the misrepresentation was unintentional. The trial court upheld the jury verdict and ordered judgment against the Vacineks on their action for intentional misrepresentation. We affirm.

## FACTS

In September 1982, Robert Ouradnik, a lifelong acquaintance of Arthur Vacinek, attempted to borrow money from respondent First National Bank of Pine City. He told the bank's loan officer, Richard Kuzel, that he was having trouble paying both his personal bills and his outstanding $10,500 debt to the bank. Kuzel obtained current credit information on Ouradnik but did not commit to lend Ouradnik any money at that time.

Ouradnik then contacted Vacinek on two occasions asking to borrow $10,000. After their second meeting, Vacinek loaned Ouradnik $2,000, saying he would consider loaning more money after he had a chance to check on Ouradnik's financial history. Although Vacinek was not a commercial lender, he was familiar with the process of lending money, having made at least a dozen loans to individuals. He also was a regular customer at the bank and had often borrowed money for his own farm business.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

The Vacineks did contact the bank to check on Ouradnik's financial status, but the parties disagree as to how and when the contact occurred. The bank claims that Kuzel was approached on two occasions in October 1982, once by Arthur Vacinek and Ouradnik and once by both Arthur and Barbara Vacinek. The Vacineks claim they met with Kuzel on four separate occasions, not in October, but in late November 1982.

The parties do agree that all meetings were unplanned, with Ouradnik and the Vacineks dropping in on Kuzel unannounced. During these meetings, the parties discussed Ouradnik's personal history, as well as the value of his properties. At no time, however, did the Vacineks tell Kuzel that they intended to lend Ouradnik any money nor did they request to review Ouradnik's financial records.

Ouradnik's only substantial assets were two parcels of real estate. One parcel was his homestead, which he owned subject to a $26,000 vendor's interest in a contract for deed. The second parcel was 80 acres of raw land which was encumbered by a $16,000 mortgage to Guaranty State Bank of St. Paul. The Vacineks knew about these assets and encumbrances.

On November 5, 1982, the bank agreed to refinance Ouradnik's outstanding debt. It discharged the previous debt and Ouradnik executed a promissory note for $12,405.82 and granted the bank a mortgage on both parcels of real estate. The mortgage was dated November 5, 1982, but was not recorded until December 12, 1982. Kuzel was out of town for two weeks in the middle of November and could not explain the delay in recording the mortgage. He testified, however, that the bank generally took from five to thirty-five days to record its mortgages.

Although the Vacineks knew about the November 5, 1982, refinance transaction, no one told them that Ouradnik had also granted the mortgage to the bank. Vacinek personally checked with the county recorder's office in late November and, of course, the mortgage did not yet appear of record. The Vacineks therefore committed to loan Ouradnik an additional $22,000 in return for what they thought would be a second mortgage on Ouradnik's real estate. However, the Vacineks did not loan the money until December 29, 1982, and, consequently, their mortgage was junior to the bank's second mortgage which had been recorded on December 12, 1982. Ouradnik used $16,711.57 from the Vacinek loan to pay off Guaranty State Bank's first mortgage on the 80 acre parcel, thereby making the bank's mortgage the first lien on this parcel.

Ouradnik soon defaulted on his loans to the bank and to the Vacineks, and these debts were ultimately discharged after Ouradnik filed a Chapter 7 bankruptcy petition. The Vacineks foreclosed their junior mortgage on the 80 acre parcel and purchased it at the sheriff's sale for $24,292.25, the total amount of their mortgage. The bank then foreclosed its senior mortgage and purchased at the sale for $14,331.27, the amount due under its mortgage. The bank's foreclosure extinguished all the Vacineks' rights in the property, except their option to redeem the property for $14,331.27, plus interest.

Claiming that the bank should have told them about the November 5, 1982, mortgage before they loaned money to Ouradnik, the Vacineks brought this action for intentional misrepresentation against the bank. After a two day trial, the jury considered and answered the following special verdict interrogatories:

1. Did the [respondent] make false representations to the [appellants] of a past or present material fact?

Answer: Yes.

2. If you answered Question No. 1 "yes," then answer this question: At the time the representations were made, did the [respondent] know the representations were false?

Answer: No.

Based on the jury's special verdicts, the court ordered judgment against the Vacineks. The Vacineks moved for judgment notwithstanding the verdict or a new trial, claiming that (1) the evidence did not support the verdict that the misrepresentation was unintentional and (2) the verdicts were

inconsistent. The court, by its order of February 18, 1987, denied the appellants' motion.

The Vacineks timely filed their notice of appeal on April 20, 1987, which reads:

> NOTICE IS HEREBY GIVEN by [appellants] Arthur J. Vacinek and Barbara Vacinek, of their appeal of the *Findings of Fact, Conclusions of Law, Order for Judgment* of this court * * *.

(Emphasis supplied.) The jurisdictional statement in their statement of the case reads:

> Appeal is from Findings of Fact, Conclusions of Law and Order for Judgment * * * *and Order dated February 18, 1987.*

(Emphasis supplied.)

## ISSUES

1. Should the appeal be dismissed because the notice of appeal and statement of the case are inconsistent and defective?

2. Was the jury's verdict that respondent did not intentionally misrepresent a material fact supported by the evidence?

3. Were the jury's special verdicts irreconcilable?

## ANALYSIS

### I.

Respondent bank claims this appeal is defective for two reasons. First, the notice of appeal and statement of the case are inconsistent. The notice of appeal states that the Vacineks appeal from the findings of fact, conclusions of law and order for judgment. None of these is an appealable document. *See* Minn.R.Civ.App.P. 103.03. However, the statement of the case correctly states that appeal is also taken from the order of February 18, 1987, denying judgment notwithstanding the verdict or a new trial. That document is appealable under Rule 103.03.

■ "[N]otices of appeal are to be liberally construed in favor of their sufficien-

cy. * * * A notice of appeal is not insufficient due to clerical errors or defects which could not have been misleading." *Kelly v. Kelly,* 371 N.W.2d 193, 195–96 (Minn.1985) (citations omitted).

Since it is clear the Vacineks are appealing from the order of February 18, 1987, their appeal is sufficient and should not be dismissed. *See id. Fladland v. Northway Construction, Inc.,* 343 N.W.2d 687 (Minn. Ct.App.1984), upon which the bank relies, is distinguishable because that case involved an attempt to appeal from an order for summary judgment.

■ The second deficiency alleged by respondent is that the appellants did not specify which clause of Rule 103.03 authorizes this appeal. Paragraph two of Form 133 in the Appendix of Forms to the Rules of Civil Appellate Procedure states that "[i]f the appeal is from an order, state * * * which clause of RCAP 103.03 * * * authorizes the appeal." Since appellants are appealing from an order denying a new trial, they should have designated that clause (d) authorized the appeal. However, this omission is not misleading and does not prejudice the bank. *See Pischke v. Kellen,* 384 N.W.2d 201 (Minn.Ct.App. 1986). Consequently, the appeal is sufficient despite this minor omission. *See id.*

### II.

■ The Vacineks claim that the jury erred by not finding that the misrepresentation was purposeful. Specifically, they claim the bank purposefully failed to tell them of the November 5, 1982, mortgage from Ouradnik [1] and that the evidence cannot support a contrary finding.

A special verdict answer "will be set aside only if perverse and palpably contrary to the evidence, or where the evidence is so clear that there is no room for differences among reasonable persons." *Jacobs v. Rosemount Dodge–Winnebago South,* 310 N.W.2d 71, 76 (Minn.1981). This court views the evidence in a light

---

1. It is clear from the record that appellants proceeded under a theory of intentional misrepresentation. Therefore, we do not address the issue of whether appellants could have succeeded under a theory of negligent misrepresentation.

most favorable to respondent and will uphold the verdict if the evidence reasonably tends to support it. *Kuehl v. National Tea Co.*, 310 Minn. 48, 50, 245 N.W.2d 235, 237 (1976). We agree with the trial court that there was sufficient evidence to support a finding that the failure to tell the Vacineks about the mortgage was not intentional.

All the Vacineks' visits to the bank were unstructured and unannounced. They never stated they were loaning money to Ouradnik, nor did they request to see Ouradnik's financial records. Kuzel testified that he did not know what type of business transaction, if any, was to occur between the Vacineks and Ouradnik. Finally, Kuzel was handling at least 60 loan applications per month at the time these conversations occurred. It appears that it was the bank's policy to frequently delay the filing of mortgages up to thirty-five days.

Considering all these factors, it is conceivable that Kuzel simply could not remember the mortgage or justifiably assumed that Ouradnik had told the Vacineks about the mortgage. In addition, Kuzel may have assumed the Vacineks did not want to know about the mortgage because they never expressed their specific intent to loan money to Ouradnik. Accordingly, we find that the evidence viewed in a light most favorable to respondent supports the jury's verdict that the bank did not make an intentional misrepresentation to the Vacineks.

### III.

■ The Vacineks alternatively argue that the jury's two special verdict answers are irreconcilable. They claim that the jury could not on one hand find there was a misrepresentation, then find that the bank did not intend to make a misrepresentation. The Vacineks assert that the circumstances of the case required the bank to disclose the November 5, 1982, mortgage. They rely on *Consolidated Foods Corporation v. Pearson*, 287 Minn. 305, 178 N.W.2d 223 (1970) for their conclusion that the failure to disclose the mortgage was a fraudulent misrepresentation as a matter of law, regardless of the bank's intent. *Consolidated Foods*, however, involved a borrower's failure to disclose encumbrances on his assets, and addressed the relationship between a bank and its customer. It does not control the result in this case.

The Vacineks also claim the bank's duty to disclose the mortgage derived from its fiduciary obligations to them. A party to a transaction generally has no duty to disclose material facts to the other. *Klein v. First Edina National Bank*, 293 Minn. 418, 421, 196 N.W.2d 619, 622 (1972). However, a person who stands in a confidential or fiduciary relationship does have a duty to disclose material facts. *Id.*

> "A fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other; and the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal."

*Stark v. Equitable Life Assurance Company of the United States*, 205 Minn. 138, 145, 285 N.W. 466, 470 (1939) (quoting *Miranovitz v. Gee*, 163 Wis. 246, 252, 157 N.W. 790, 792 (1916)). *See also Norwest Bank Hastings v. Clapp*, 394 N.W.2d 176, 179 (Minn.Ct.App.1986). Thus, the fiduciary relationship has two characteristics: superiority of knowledge of one party and confidence reposed by the other. A bank is generally not its customer's fiduciary unless the bank knows or ought to know its customer is placing confidence in the bank. *Klein*, 293 Minn. at 422, 196 N.W.2d at 623.

In this case, the evidence as a whole does not indicate a fiduciary relationship. First, it is not clear the bank had superior knowledge. Mr. Vacinek had known Ouradnik his entire life and, presumably, had some knowledge of Ouradnik's financial status. In addition, since the bank was only one of Ouradnik's several major creditors, the Vacineks could have gained information from a number of sources, including Ouradnik himself. Moreover, Arthur Vacinek himself was a fairly knowledgeable investor and this fact also militates against a finding that the bank had superior knowledge. *Cf. Clapp*, 394 N.W.2d at 179.

Secondly, the evidence does not show that the bank should have known the Vacineks were placing their trust or confidence in the bank. Just as the investor in *Clapp*, where this court concluded there was no fiduciary relationship, the Vacineks never told anyone at the bank that they expected the bank to look out for their interests. *Id.* at 179; *see also Klein*, 293 Minn. at 422, 196 N.W.2d at 623. The fact that Vacinek was a long time customer of the bank is insufficient, by itself, to establish a fiduciary relationship. *See Klein*, 293 Minn. at 422, 196 N.W.2d at 623. Consequently, we conclude that the bank had no fiduciary duty to the Vacineks such that it was required to disclose the existence of the mortgage of November 5, 1982.

As a final argument, the Vacineks assert that this case is controlled by *Gerdin v. Princeton State Bank*, 384 N.W.2d 868 (Minn.1986) where the court stated that purchasers at a mortgage foreclosure sale had a right to assume all junior tax liens would be extinguished by the sale. *Id.* at 872. However, the court in *Gerdin* based its conclusion on the purchaser's statutory right to receive evidence of clear title. *See* Minn.Stat. § 580.15(4) (1984). *Gerdin* is therefore inapplicable to this case where the Vacineks have no underlying right to clear title, or a superior lien to that of the bank, simply by virtue of their obtaining a mortgage from the bank's debtor.

### DECISION

Appellant's notice of appeal is sufficient because it was not misleading and did not prejudice respondent. The jury's special verdicts were supported by the evidence and were not irreconcilable.

Affirmed.