### In the Matter of the Petition of CRABLEX, INC.

### In Relation to Certificate of Title No. 1091583, issued for land in the County of Hennepin and State of Minnesota, and for a new Certificate of Title after Mortgage Foreclosure Sale.

#### No. A08–0458.

Court of Appeals of Minnesota.

Feb. 10, 2009.

James Christoffel, Christoffel & Elliott, P.A., St. Paul, MN, for appellant Crablex, Inc.

Joel A. Mintzer, Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, MN; and James A. Dueholm, Washington, DC, for intervenor Fine Associates, LLC.

John M. LeFevre, Peter G. Mikhail, Minneapolis, MN, for respondent City of Minneapolis.

James M. Lockhart, Christopher R. Grote, Karla M. Vehrs, Lindquist & Vennum, P.L.L.P., Minneapolis, MN, for respondents Riverside Plaza Limited

Partnership, Minneapolis Community Development Agency, and Capmark Finance, Inc.

Robert Salmon, Meagher & Geer, P.L.L.P., Minneapolis, MN, for respondent Cedar Cultural Center.

Considered and decided by KLAPHAKE, Presiding Judge; LANSING, Judge; and WORKE, Judge.

## OPINION

LANSING, Judge.

This appeal from summary judgment in a Torrens proceeding raises issues on the effect of a mortgage foreclosure on easements that were memorialized on the certificate of title after the mortgage. Because the mortgagee subordinated the mortgage to five of the easements, and the holders of the remaining easements were not named parties in the mortgage foreclosure action, we affirm the district court's determination that the interests, as they currently exist, should not be omitted from the certificate of title.

## FACTS

The Cedar–Riverside Land Corporation (CRLC) obtained a loan from First Trust Company of Saint Paul in December 1971. The loan was secured by a mortgage on real property that CRLC owned in the Cedar–Riverside area of Minneapolis. First Trust assigned the CRLC mortgage to Crablex, Inc. in 1994.

Crablex filed an action to foreclose the CRLC mortgage in 1995. The parties to the action included CRLC, Minneapolis Community Development Agency (MCDA), Riverside Plaza Limited Partnership (Riverside Plaza), and Mellon Mortgage Company. The district court entered a decree of foreclosure in February 2005. The decree ordered the sheriff to sell the property that was encumbered by the CRLC mortgage at a public sale. Crablex was the successful bidder at the sheriff's sale, and in May 2005 the sheriff issued Crablex a certificate of sale, subject to a six-month redemption period.

One day after it purchased the property at the sheriff's sale, Crablex negotiated a sale of the property to Fine Associates, LLC. Crablex and Fine Associates entered into a purchase agreement and signed amendments to the purchase agreement in December 2005, May 2006, and September 2007. Because of a dispute over the terms and conditions of the purchase agreement and amendments, Crablex and Fine Associates did not close the sale. At the time this appeal was argued, they were still litigating that dispute in a separate lawsuit.

About ten months after Crablex purchased the property at the sheriff's sale, Crablex, under the Torrens act, petitioned the district court to direct the registrar of titles to enter a new certificate of title for the CRLC foreclosure property free and clear of specified encumbrances that were registered after December 13, 1971, the date on which the CRLC mortgage was registered. Based on the examiner of title's assessment of Crablex's petition, the district court issued an order to show cause why the proposed certificate of title should not be entered. The order was sent to forty-six parties.

The dispute that underlies this appeal involves five parties' responses to the order to show cause: MCDA; Riverside Plaza; Capmark Finance, Inc. (successor in interest to Mellon Mortgage Company); City of Minneapolis; and Cedar Cultural Center. Each of these parties claims interests in registered easements that would be omitted in the new certificate of title. Crablex and the five responding parties filed cross-motions for summary judgment

in December 2006. The district court denied Crablex's motion and granted the motions of the five responding parties, determining that the easements were valid, in full force and effect, and would continue to encumber the property.

Crablex appealed the district court's summary judgment in March 2008, and oral arguments were scheduled for November 2008. Two weeks before the scheduled arguments, counsel for Crablex sent a letter to both Crablex and Fine Associates stating that, unless Crablex clarified how it wished to proceed in the appeal, counsel would withdraw from representation of Crablex. Fine Associates responded by filing an emergency motion to substitute parties and attorneys. The next day the attorneys for Crablex filed a notice withdrawing as counsel. We granted Fine Associates' emergency motion "to the extent it [sought] to preserve Fine Associate[s]' interest in the property and its attendant right to protect that interest on appeal," thereby permitting counsel for Fine Associates to participate in the oral argument. Crablex did not participate in oral argument.

## ISSUES

I. What is the status of Fine Associates in this litigation?

II. Did the district court err when it granted the respondents' motions for summary judgment?

## ANALYSIS

### I

 In permitting Fine Associates to participate in oral argument, we construed their emergency party-substitution motion as a motion to intervene. Because substitution results in the elimination of a party to the action, it is appropriate only when the record establishes that the party that would be eliminated can no longer claim any interest in the lawsuit. *Walker v. Sanders,* 103 Minn. 124, 127, 114 N.W. 649, 650 (1908). The record indicates that Crablex has a continuing interest in the property, and, therefore, we decline to substitute Fine Associates for Crablex in the litigation.

Fine Associates may, however, protect its interests in the property as an intervenor. *See Jacobs v. Jacobs,* 227 Minn. 451, 456, 35 N.W.2d 611, 615 (1949) (stating that if party to be eliminated "retains any substantial interest ... or may become liable to the [party seeking substitution] if the action fails, intervention ..., and not substitution, is the proper remedy"). The Minnesota Rules of Civil Procedure govern intervention of right in district court proceedings. Under rule 24.01, a nonparty is entitled to intervene if it (1) makes a timely application; (2) has an interest relating to the property or transaction that is the subject of the action; (3) demonstrates that the disposition of the action may as a practical matter impair or impede the party's ability to protect that interest; and (4) shows that it is not adequately represented by the existing parties. Minn. R. Civ. P. 24.01; *Minneapolis Star & Tribune Co. v. Schumacher,* 392 N.W.2d 197, 207 (Minn. 1986). Minnesota has a "policy of encouraging all legitimate interventions." *Costley v. Caromin House, Inc.,* 313 N.W.2d 21, 28 (Minn.1981).

The requirements of Minn. R. Civ. P. 24.01 provide guidance for appellate intervention, and Fine Associates meets each of the four intervention requirements. It satisfies the first requirement because it promptly moved for inclusion in the litigation upon learning of Crablex's potential withdrawal and because it essentially seeks rulings only on the merits of Crablex's appeal and, therefore, its intervention will not unduly delay or prejudice the

rights of the other parties. *See Brakke v. Beardsley*, 279 N.W.2d 798, 801 (Minn. 1979) (stating that, although posttrial motions to intervene are not viewed favorably, they are not prohibited); *Engelrup v. Potter*, 302 Minn. 157, 165–66, 224 N.W.2d 484, 488–89 (1974) (noting that timeliness is determined on case-by-case basis and depends in part on whether existing parties will be prejudiced). It has an interest in the CRLC foreclosure property evidenced by its purchase agreement. *See Stiernagle v. County of Waseca*, 511 N.W.2d 4, 5 (Minn.1994) (recognizing that binding contract for sale of real estate vests equitable title in purchaser). The disposition of this action affects Fine Associates' ability to challenge easements encumbering the property. And the failure of Crablex to participate in oral argument demonstrates that Fine Associates' interest was not adequately represented by the existing parties.

We, therefore, conclude that Fine Associates may intervene. Because Crablex, through its appellate brief, and Fine Associates, in its intervention, raise the same issues and seek to protect the same property interest, we refer to them collectively as Crablex.

## II

"On appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether a party is entitled to judgment as a matter of law." *Yang v. Voyagaire Houseboats, Inc.*, 701 N.W.2d 783, 788 (Minn.2005). In assessing the evidence, we take the view most favorable to the party against whom judgment was granted. *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 n. 1 (Minn.2003). But, if the nonmoving party fails to raise a genuine issue of fact on any element essential to establishing its case, summary judg-

ment is appropriate. *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995). When the material facts are not in dispute, we review the district court's application of law de novo. *In re Collier*, 726 N.W.2d 799, 803 (Minn.2007).

The summary judgment in this case was granted in a proceeding under the Torrens act. The Torrens act establishes recording requirements so that interested parties can easily determine the status of title, *id.* at 804, and provides for proceedings in the nature of a quiet title action. 25 Eileen M. Roberts, *Minnesota Practice* § 3:4 (2008). Its provisions specifically address the rights of a person who has "become the owner in fee" of real property by way of a mortgage foreclosure. Minn.Stat. § 508.58, subd. 2 (2008). A new fee owner is "entitled to a new certificate of title" for the real property after the foreclosure's redemption period expires. *Id.* To obtain it directly from the examiner of titles, the examiner must verify foreclosure and determine "the instruments the registrar shall omit from the new certificate of title by virtue of the foreclosure." *Id.* Otherwise, he obtains it by petition to the district court, which notifies parties of interest, holds necessary hearings, and makes "an order for the issuance of a new certificate of title to the person entitled thereto." *Id.*, subd. 1 (2008).

Crablex seeks a court order that would effectively omit the easements in which the respondents in this case claim an interest. Crablex asserts that the easements were eliminated by the mortgage foreclosure because the easements had been memorialized on the certificate of title after the mortgage. The respondents dispute that assertion and contend instead that the easements continue to encumber the foreclosed property, notwithstanding the foreclosure.

To evaluate these competing arguments we start from the general principles on the effect of a mortgage foreclosure. In a Torrens system, a recorded mortgage ordinarily has priority over all encumbrances or interests that are recorded after the mortgage. *See* Minn.Stat. § 508.25 (2008) (noting that "person receiving certificate of title" holds property free from all encumbrances and claims except for certain prior recorded interests, including mortgages). Minnesota courts have long applied this principle in foreclosure actions: a mortgage foreclosure terminates interests over which the mortgage has priority. *See, e.g., Geo. Benz & Sons v. Willar,* 198 Minn. 311, 315, 269 N.W. 840, 842 (1936) (upholding termination). Minnesota law is consistent in this respect with the Restatement (Third) of Property (Mortgages) § 7.1 (1996), which provides that a "valid foreclosure of a mortgage terminates all interests in the foreclosed real estate that are junior to the mortgage . . . and whose holders are properly joined or notified." Termination of junior interests, however, is subject to negotiation by parties: a person holding an earlier-recorded property interest can give priority to a later-recorded property interest through a subordination declaration or agreement. Restatement (Third) of Property (Mortgages) § 7.7 (1996); *see also id.,* cmt. a (stating that subordination can be accomplished by the mortgagee executing "a simple statement identifying [the interest that will gain priority] and declaring the mortgage to be subordinate to it").

Minnesota caselaw has not directly addressed whether easements receive the same treatment as other encumbrances recorded after the recorded mortgage, but we are unable to discern a reason to treat them differently. The Restatement (Third) of Property (Mortgages) § 7.1, cmt. a, states that easements recorded after a recorded mortgage are terminated when the mortgage is foreclosed. Relying on the restatement and the absence of a reason to treat easements differently from other encumbrances, we conclude that a valid foreclosure of a mortgage terminates all easement interests in the foreclosed real estate that are junior to the mortgage being foreclosed and whose holders are properly joined or notified in the foreclosure action.

Likewise, Minnesota courts have not expressly held that a mortgagee can subordinate its interest to the holder of a later-recorded easement through declaration or agreement, but caselaw indicates that mortgagees should be treated the same as other senior-interest holders. *See Holasek v. First Nat'l Bank of Rochester,* 278 N.W.2d 519, 520 (Minn.1979) (noting that first mortgage holder agreed to subordinate its prior lien to that of second mortgage holder); *Peaslee v. Hart,* 71 Minn. 319, 320–21, 73 N.W. 976, 976–77 (1898) (determining that, even if valid, mortgagee's subordination did not affect appellant's rights). And, again, we find no basis for treating easements differently than other property interests. A mortgage, by declaration of its mortgagee, may be made subordinate in priority to an easement on the mortgaged real estate.

With these principles in place, we turn to our analysis of whether, as a matter of law, the easements at issue survived the foreclosure.

### Riverside's Motion for Summary Judgment

Three of the respondents—MCDA, Riverside Plaza, and Capmark—assert that easements benefiting the Riverside Plaza, a housing complex adjacent to the foreclosed property, survive the foreclosure. These three respondents, called Riverside for ease of reference, identify easements that they argue were not terminated by

the foreclosure and should not be omitted from the new certificate of title. These easements are: "Tank & Tower Easement," "McKnight Driveway Easement," "E–Building Parking & Utility Easement," "Exterior Maintenance Easement," and "Gas Line Easement."

■ Crablex contends that we need not address Riverside's arguments that the easements survived the foreclosure because their claims are barred under the doctrine of res judicata. Specifically, Crablex argues that the claims were settled in the foreclosure action and emphasizes that the foreclosure decree states, "If no redemption is made during the time period allowed by law, [Crablex] shall be deemed to be the absolute owner of the [f]oreclosure [p]remises, subject only to prior encumbrances of record, if any." But res judicata only bars claims that the estopped party had a full and fair opportunity to litigate in an earlier proceeding. *State v. Joseph*, 636 N.W.2d 322, 327 (Minn.2001). And Riverside did not have a full and fair opportunity to litigate the easement issue in an earlier proceeding.

The record shows that Riverside did not pursue the easement issue at the foreclosure trial because they believed it was resolved in a binding settlement agreement. At the beginning of the trial in the foreclosure proceeding in February 2000, the attorney for Riverside stated that the parties were in settlement negotiations and that he was reluctant to proceed until the settlement agreement was finalized because otherwise his client's interests might be prejudiced. The attorney for Crablex told the court he expected that any outstanding issues in the settlement agreement would likely be resolved shortly. The next day at trial, both attorneys indicated that an agreement had been reached, and the attorney for Riverside told the court that "one of the points of the settle-ment agreement was to recognize the continuing validity of recorded easements." Crablex's attorney did not object to this statement. Although Crablex's counsel later indicated in letters to Riverside's counsel that Crablex did not consider itself bound by the February 2000 settlement agreement, this issue was never raised with the district court. Furthermore, there is no indication that the district court in the foreclosure proceeding was notified of any disputes over the five easements before it entered its 2005 decree.

Under these circumstances, Riverside's claims in the Torrens action were not barred by res judicata. Thus, we examine whether the claims have merit.

■ Riverside primarily argues that the five easements remain valid and enforceable under the terms of a settlement agreement that was entered between Crablex, CRLC, Riverside Plaza, and MCDA in February 2000 during the foreclosure proceedings. The settlement agreement states:

"[T]he parties agree, and release any claims, actions, or causes of action to the contrary, that any easements that are or have been filed or recorded with respect to the [f]oreclosure [p]remises ... and which benefit or were intended to benefit that real property commonly known as the Riverside Plaza apartment complex ... are valid and enforceable, and will remain valid and enforceable after the foreclosure of the [f]oreclosure [p]remises, except [for three driveway easements that were terminated in 1974]."

■ To determine the effect of the settlement agreement, we must interpret the agreement in the same manner we interpret contracts. *State by Humphrey v. Philip Morris USA, Inc.*, 713 N.W.2d 350, 355 (Minn.2006). "[T]he primary goal

of contract interpretation is to determine and enforce the intent of the parties." *Motorsports Racing,* 666 N.W.2d at 323. When the parties express their intent in unambiguous words, we give effect to the contract's plain and ordinary meaning. *Id.* The interpretation of a settlement agreement is an issue of law we review de novo. *Philip Morris,* 713 N.W.2d at 355.

We conclude that the settlement agreement unambiguously subordinates Crablex's mortgage interest to the easement interests asserted by Riverside. The agreement states that the parties "agree ... that *any* easements ... filed or recorded [and] intended to benefit ... Riverside Plaza ... *will remain valid and enforceable after the foreclosure.*" (Emphasis added.) Undoubtedly, the parties to the agreement could have used more precise language to effect the subordination. A uniform conveyancing form originally adopted under Minn.Stat. § 507.09 (2008) sets forth suggested language for subordination declaration as "the undersigned hereby subordinates the lien on real property ... to a subsequent lien." [1] Nonetheless, the language used in the provision is unambiguous—the only way to read this provision is as a declaration giving priority to the easements. Subordinating, or granting priority, to a junior interest does nothing other than to allow the interest to remain "valid and enforceable after the foreclosure."

Crablex argues that the settlement agreement has no effect because it is unenforceable. Specifically, Crablex contends that the agreement is unenforceable because CRLC's attorney did not sign the signature block that was provided for him and because the agreement was obtained

in violation of Minnesota Rule of Professional Conduct 4.2, which prohibits dealing directly with another lawyer's client. Neither of these arguments is persuasive.

The first argument fails because the absence of CRLC's attorney's signature does not affect the agreement's enforceability. A party's acts constitute an acceptance if they manifest her "assent when evaluated under an objective standard." *Holman Erection Co. v. Orville E. Madsen & Sons, Inc.,* 330 N.W.2d 693, 695 (Minn.1983); *see also Bauer v. Am. Int'l Adjustment Co.,* 389 N.W.2d 765, 767 (Minn.App.1986) (noting that settlement agreement, like contract, requires offer and acceptance), *review denied* (Minn. Sept. 24, 1986). It is undisputed that CRLC's general partner signed the agreement, that she was authorized to bind the company, and that under Minnesota law parties may settle cases without advising their attorneys of the settlement. *See Weikert v. Blomster,* 213 Minn. 373, 375, 6 N.W.2d 798, 799 (1942) (noting that party may settle controversy without advising his attorney). Furthermore, the agreement states, "It is acknowledged that the undersigned are represented by their own counsel in connection with the foregoing, that this mutual release has been read and explained and a copy thereof delivered." By signing the document, CRLC's general partner indicated that she had consulted with her attorney and was satisfied that it had been explained to her. From an objective standpoint, she assented to the agreement.

We are also unpersuaded by Crablex's argument that relies on Minnesota Rule of Professional Conduct 4.2. Crablex fails to demonstrate that the rule provides authority for voiding contracts. And we find no

---

1. A variety of these forms are available online in a blank, printable format. *See* Minnesota Department of Commerce Real Estate Uniform Conveyancing Blanks, http://www.state. mn.us/portal/mn/jsp/home.do?agency= Commerce (follow "Industry Info and Services" to "Real Estate" and scroll to "Uniform Conveyancing Blanks").

evidence in the record indicating that CRLC's general partner was taken advantage of by other lawyers in the absence of counsel.

In summary, the district court properly concluded that the parties' settlement agreement is enforceable and that Riverside is entitled to summary judgment under the Torrens act with respect to all five easements.

### The City of Minneapolis' and Cedar Cultural's Motions for Summary Judgment

The city and Cedar Cultural both argue that their easements should continue to encumber the foreclosed property because they were not joined as parties in the foreclosure action. A foreclosure action "never binds any one who has not been made a party, or who has not subsequently succeeded to the rights of one who was a party." *Whalley v. Eldridge*, 24 Minn. 358, 359 (1877); *see also* Restatement (Third) of Property (Mortgages) § 7.1 cmt. b (stating that "[w]here the holder of a junior interest is not made a party in the [foreclosure action], that interest is neither terminated nor otherwise prejudiced by the foreclosure"). Thus, the district court did not err when it granted summary judgment to the city and Cedar Cultural and held that as a matter of law their registered easements should not be omitted from the certificate of title.

Crablex argues that the city's and Cedar Cultural's easements were extinguished nonetheless because they did not have statutory rights of redemption, and, thus, were not entitled to be joined in the foreclosure. Not so. As parties claiming under CRLC, the mortgagor, the city, and Cedar Cultural had a statutory right to redeem. Minn.Stat. § 581.10 (2008); *see also* Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law* § 7.2, at 570–71 (5th ed. 2007) (stating generally that "law favors redemption by anyone who has an interest in the mortgaged premises who would be a loser by foreclosure," including "the holder of an easement").

Crablex also points to *Gerdin v. Princeton State Bank*, 384 N.W.2d 868 (Minn. 1986), which allowed the purchaser at a foreclosure sale to void the sale when the mortgagee failed to provide the purchaser with a title unencumbered by junior liens for which no notice had been given. *Id.* at 872. But Crablex is not seeking to void the sale, and Minnesota caselaw does not settle the specific question of what happens to unjoined, junior easement interests when the sale remains intact—that is, whether they take priority over the purchaser's interest or remain subject to foreclosure. *Cf. Diamond Benefits Life Ins. Co. v. Troll*, 66 Cal.App.4th 1, 77 Cal. Rptr.2d 581, 586 (1998) (holding that easement holder remained subject to foreclosure but was entitled to equitable right of complete redemption); *Monese v. Struve*, 155 Or. 68, 62 P.2d 822, 825–28 (1936) (holding that easement holder remained subject to foreclosure with equitable right of proportional redemption); *Recent Cases*, 50 Harv. L.Rev. 978, 990 (1936–37) (discussing *Monese*). We need not and do not address that question. We conclude only that, whatever the status of the city's and Cedar Cultural's junior interests are now, they were not extinguished by the foreclosure action in which they were not parties. Summary judgment in their favor was proper.

### DECISION

Because the doctrine of res judicata did not bar the claims of Riverside, and Crablex agreed to give priority to the five easements in an enforceable settlement agreement, summary judgment was proper in precluding omission of the easements

from the certificate of title. Because the city and Cedar Cultural were not joined in the foreclosure action, their easement interests were unaffected by the action and the district court properly granted their motions for summary judgment.

**Affirmed.**